# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KATIE HANSEN,

    Plaintiff,

v.                               Case No. 24-CV-807

LABORATORY CORPORATION OF
AMERICA,

    Defendant.

## DECISION AND ORDER ON PLAINTIFF'S MOTION TO REMAND

On May 28, 2024, Katie Hansen filed a complaint in state court against Laboratory Corporation of America ("Labcorp") alleging a violation of Wis. Stat. § 109.03. Labcorp subsequently removed the action to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. Hansen now moves to remand the case back to state court on the grounds that this Court lacks subject matter jurisdiction. For the reasons stated below, Hansen's motion to remand is granted. Labcorp's pending motion to dismiss is denied as moot.

## BACKGROUND

Hansen sued her employer, Labcorp, in Milwaukee County Circuit Court alleging Labcorp violated Wis. Stat. § 109.03 by failing to pay short-term disability ("STD") benefits allegedly due under Labcorp's employee benefits plan (the "Plan"). (Compl., Docket # 1-1.) On June 28, 2024, Labcorp removed the action to this Court on the grounds that Labcorp's Plan is governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA") and thus falls under federal jurisdiction. (Docket # 1.) After removal,

Labcorp moved to dismiss Hansen's complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Hansen's state law claim is preempted by ERISA. (Docket # 6.)

Hansen responded with a motion to remand the case to state court and hold Labcorp's motion to dismiss in abeyance pending resolution of the remand motion. (Docket # 9.) Hansen argues that Labcorp's STD plan is a payroll practice exempt from ERISA under 29 C.F.R. § 2510.3-1(b)(2). (Docket # 9.) As such, Hansen argues this Court lacks subject matter jurisdiction and the case must be remanded. (*Id.*) Labcorp objects to Hansen's remand motion but does not address Hansen's motion to hold the motion to dismiss in abeyance.

## LEGAL FRAMEWORK

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Although Hansen moves to remand the case, because Labcorp removed the case to federal court, it bears the burden of proving that this Court has subject matter jurisdiction. *Wisconsin v. Abbott Labs.*, 341 F. Supp. 2d 1057, 1060 (E.D. Wis. 2004) (citing *Tykla v. Gerber Products Co.*, 211 F.3d 445, 448 (7th Cir. 2000)). "To meet this burden, defendants must support their allegations of jurisdiction with evidence indicating a 'reasonable probability that jurisdiction exists.'" *Id.* (quoting *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997)). In determining whether removal was proper, a district court must construe the removal statute, 28 U.S.C. § 1441, narrowly and resolve any doubts regarding subject matter jurisdiction in favor of remand. *Id.*

## ANALYSIS

Hansen alleges she has been disabled under Labcorp's STD plan since April 18, 2023 and that Labcorp improperly denied her claim for STD benefits, prompting her to file a

lawsuit in state court under Wisconsin's wage laws. (Compl., Docket # 1-1.) Labcorp removed Hansen's Wisconsin wage law case on the grounds that federal question jurisdiction exists, specifically, that the STD plan is subject to ERISA. (Notice of Removal ¶ 5.) Hansen argues, however, that the STD plan is a "payroll practice" exempt from ERISA. *See* 29 C.F.R. § 2510.3-1(b)(2). Thus, to determine whether jurisdiction in this Court is proper, the question is whether Labcorp's STD plan is subject to ERISA.

    1.    *ERISA Framework*

ERISA was passed by Congress in 1974 to safeguard employees from the abuse and mismanagement of funds that had been accumulated to finance various types of employee benefits. *Massachusetts v. Morash*, 490 U.S. 107, 112 (1989). ERISA defines an "employee welfare benefit plan" in relevant part as "any plan, fund, or program which was . . . established or maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . benefits in the event of . . . disability . . . ." 29 U.S.C. § 1002(1). ERISA gives the Secretary of Labor the express authority to prescribe regulations "necessary or appropriate to carry out the provisions of this subchapter." 29 U.S.C. § 1135. One such regulation provides that even if a plan constitutes an "employee welfare benefit plan" under ERISA, certain "payroll practices" are exempt, including:

> Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment)

29 C.F.R. § 2510.3-1(b)(2). The Supreme Court in *Morash* explained that the purpose of this

"payroll practice" exemption was to distinguish between "the benefit programs covered by the Act and the types of regular compensation, including vacation pay, that are not covered." 490 U.S. at 117. The Court noted that the states have traditionally regulated the payment of "wages," including such things as sick pay and vacation pay. *Id.* at 119. The Court further noted that when "'employees are paid as a part of their regular compensation directly by the employer and under which no separate fund is established,'" *id.* at 117 (quoting 39 Fed. Reg. 42236 (1974)), the employees face less risks and have less need for ERISA's reporting and disclosure requirements than employees who are beneficiaries of a trust, *id.* at 120. *See also McMahon v. Digital Equip. Corp.*, 162 F.3d 28, 36 (1st Cir. 1998) ("Where an employer pays occasional, temporary benefits from its general assets, there is no benefits fund to abuse or mismanage and no special risk of loss or nonpayment of benefits.").

The burden is on the party claiming that an ERISA plan exists to show that the benefit plan is an ERISA plan. *Havey v. Tenneco, Inc.*, No. 98 C 7137, 2000 WL 198445, at *8 (N.D. Ill. Feb. 11, 2000). This is true even when the opposing party is invoking a regulation that excepts the plan from being an ERISA plan. *Id.*

   *2.    "Payroll Practice" Exemption*

Hansen asserts that the STD benefits fall under the regulation's "payroll practice" exemption. Labcorp, on the other hand, argues that the STD benefits it provides are merely one part of a single group benefits plan governed by ERISA and that the STD benefits cannot be considered independent of the plan as a whole. (Docket # 14 at 5–6, 9–12.) Alternatively, Labcorp argues that even if its STD benefits fall within the "payroll practice" exemption, pursuant to the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), the Department of Labor acted outside of its authority when it promulgated

4

this exemption and thus the regulation must be disregarded. (*Id.* at 13–16.)

During the relevant period, Labcorp had in place multiple benefit plans providing its employees coverages such as medical, dental, vision, flexible spending accounts, no charge laboratory testing, long-term disability, and short-term disability. (Notice of Removal ¶ 5, Ex. B, Docket # 1-2.) The "Overview Section" at the beginning of the 2023 Labcorp Personal Choice Benefits Handbook (the "Handbook") states that:

> This information is part of your Personal Choice Benefits Handbook for 2023, which constitutes the summary plan description (SPD) for the Labcorp health and welfare and retirement plans offered through the Labcorp Personal Choice Benefits Program subject to the Employee Retirement Income Security Act of 1974 (ERISA), the federal law that governs certain employee benefit plans.

(Docket # 1-2 at 10.) The Handbook further contains a section at the end entitled "Your Rights Under ERISA." (*Id.* at 86–87.) The Handbook also articulates the contribution and funding source for each benefit plan in the "Plan Information" section. (*Id.* at 83–84.) The Handbook states that Labcorp's STD plan is "self-funded; Labcorp pays all costs" whereas its long-term disability plan is "Insured; Labcorp and participants pay premiums." (*Id.* at 84.)

As articulated above, the regulations provide that an "employee welfare benefit plan" does not include payment of (1) an employee's normal compensation, (2) out of the employer's general assets, (3) due to an absence for medical reasons. 29 C.F.R. § 2510.3-1(b)(2). It appears that Labcorp's STD plan meets these regulatory requirements for a "payroll practice." First, Labcorp's STD benefits are paid "through regular Labcorp payroll according to your normal payroll cycle" and that all "normal payroll deductions" (with the exception of Employee Stock Purchase contributions) "will continue." (Docket # 1-2 at 52.) Second, the STD plan is "self-funded," with Labcorp paying all costs. (*Id.* at 84.) And third, the STD benefits are provided if an employee is "unable to perform one or more of the material duties

5

of your regular occupation solely because of disease, injury or pregnancy." (*Id.* at 52.)

Labcorp fails to address the heart of Hansen's argument, that its STD plan appears to fit the regulatory definition of an exempt "payroll practice." Instead, Labcorp argues that under the First Circuit's decision in *McMahon*, even if short-term disability benefits are paid out of an employer's general assets, it does not constitute a "payroll practice" so long as the employer treated the plan as one covered by ERISA; the employer assured employees they were entitled to ERISA's protections; and the plan was funded, in part, by an insurance contract and trust fund and was secured by a fidelity bond. (Docket # 14 at 9, citing *McMahon*, 162 F.3d at 37–38.)

In *McMahon*, plaintiff McMahon sued her former employer, Digital, under ERISA and various state laws for allegedly improperly denying her short-term and long-term disability benefits. 162 F.3d at 31. The case was removed to federal court and the district court found McMahon's state law claims preempted by ERISA. *Id.* On appeal, McMahon argued that her short-term disability benefits were a "payroll practice" exempt from ERISA; thus, her state law claims were not preempted by federal law. *Id.* at 31–32.

Digital's short-term disability benefits program included three separate plans—a "Sick Pay Plan," an "Accident and Sickness Plan," and a "Salary Continuation Plan." *Id.* at 33. McMahon was subject to the Salary Continuation Plan and was eligible for up to six months of short-term disability leave with full salary. *Id.* Digital considered the "Accident and Sickness Plan" and the "Salary Continuation Plan" to be components of a single short-term disability plan, labeled "Plan 502." *Id.* at 34. The 5500 Forms for Plan 502 show that Digital did not fund Plan 502 solely out of its general assets; rather, during both the 1991 and 1992 plan years, the Plan was partially funded by an insurance contract (though the insurance

6

contract was limited to New York employees) and was secured during both plan years by a $500,000 fidelity bond. *Id.*

The First Circuit found that the record evidence did not support that Digital's short-term disability program was an exempt "payroll practice." *Id.* at 37. The court found that the record demonstrated that Digital treated the "Accident and Sickness Plan" and the "Salary Continuation Plan" as two components of a single ERISA short-term benefits plan and that benefits under both plans were partially funded by insurance and secured by a fidelity bond. *Id.* The court stated that "McMahon's payroll practice argument is wrong because her benefits derived from an employee welfare benefit plan (Plan 502) that was supported by assets outside of Digital's general operating funds. Such a plan cannot be a payroll practice under the express terms of 29 C.F.R. § 2510.3–1(b)(2)." *Id.* In so holding, however, the court clarified that "[w]e do not hold that an employer's mere labeling of a plan determines whether a plan is an ERISA plan . . . . But where, as here, an employer partially funds a plan from sources outside of its general assets, files documents with the Department of Labor and the IRS consistent with the plan's ERISA status, and informs employees that the plan is subject to ERISA regulation, we find that the plan is an ERISA plan and not a payroll practice." *Id.* at 38.

Labcorp likens its case to *McMahon*, arguing that even if a plan otherwise meets all of the elements of 29 C.F.R. § 2510.3-1(b)(2), including paying benefits out of the employer's general assets, the plan can still fall under ERISA so long as the employer treats the plan as an ERISA plan. (*See* Docket # 14 at 11.) Labcorp argues that it did just that, stating that it complied with IRS requirements and reported the STD plan as an ERISA Plan pursuant to Form 5500, as well as informed its employees of their rights under ERISA. (*Id.* at 9–10.) But the *McMahon* court was careful to state that an employer's labeling of a plan does *not*

determine whether it is subject to ERISA. 162 F.3d at 37–38. Further, in determining whether a "plan" has been established within the meaning of ERISA, "the fact that Defendant complied with some of ERISA's requirements is not enough by itself to establish that the . . . policy constitutes an ERISA plan." *Clevenger v. Securitas Sec. Servs. USA, Inc.*, No. 07-CV-2219, 2008 WL 2168742, at *7 (C.D. Ill. May 22, 2008). Nor is the way in which an employer characterizes its plan dispositive in determining ERISA coverage. *Id.*

In *McMahon*, the court found that because the plan at issue was not funded solely from the employer's general assets, it could not constitute a "payroll practice" under the regulation's express terms. 162 F.3d at 37–38. Therein lies a vital distinction between the plan at issue in *McMahon* and Labcorp's plan—Labcorp's plan *is* funded solely from the employer's general assets thus it does constitute a "payroll practice" under the regulation's express terms.[1]

Furthermore, while Labcorp insists that the STD plan meets the definition of an ERISA plan (Docket # 14 at 5), what the "payroll practice" regulation does is exempt certain practices from ERISA, even if the plan would otherwise meet the definition of an ERISA "plan." The regulation "has exempted from ERISA certain benefit programs, called 'payroll practices,' that fall within the statute's scope." *Vagnoni v. Sears, Roebuck & Co.*, No. 98 C 5308, 2002 WL 54542, at *4 (N.D. Ill. Jan. 15, 2002) ("It is undisputed that Sears paid STD benefits entirely from its own assets. . . . As such, Sears' STD plan is a payroll practice, not an ERISA plan."). In other words, even if a Plan would otherwise fall under the definition of an "employee welfare benefit plan," the regulation serves to take certain payroll practices out of that definition.

---

[1] Labcorp cites two other cases, *Diak v. Dwyer, Costello & Knox, P.C.*, 33 F.3d 809 (7th Cir. 1994) and *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987), arguing they also stand for the proposition that benefits paid out of general funds are subject to ERISA. (Docket # 14 at 11–12 n.1.) But neither *Diak* nor *Fort Halifax* address the "payroll practice" exception to ERISA and thus are of limited value on this question.

Finally, Labcorp argues, citing *Postma v. Paul Revere Life Ins. Co.*, 223 F.3d 533 (7th Cir. 2000) in support, that for purposes of determining whether a benefit plan is subject to ERISA, so long as a disability policy is part of a broader benefits package subject to ERISA, that policy is also an ERISA plan. (Def.'s Br. at 10, citing *Postma*, 223 F.3d at 538.) Labcorp relies on the *Postma* court's statement that "For purposes of determining whether a benefit plan is subject to ERISA, its various aspects ought not be unbundled." 223 F.3d at 538. In *Postma*, plaintiff Postma enrolled in a long-term disability insurance program provided by Paul Revere Life Insurance Company. Postma was injured and was eventually terminated from her position. After having difficulty securing work within her work restrictions, Postma filed a claim for disability benefits. Paul Revere denied her claim. Postma sued Paul Revere for breach of contract and for breach of the implied covenant of good faith and fair dealing.

The parties disputed whether Paul Revere's LTD plan was governed by ERISA. *Id.* at 536–37. Specifically, the parties disputed whether the plan was "established or maintained by an employer" as required by 29 U.S.C. § 1002(1). The court noted that an "employer establishes or maintains a plan if it enters a contract with the insurer and pays its employees' premiums" and stated that to "help determine whether an insurance plan falls under ERISA, the Department of Labor's regulations, through a 'safe harbor' provision, provide a guideline for when a plan *does not* fall under ERISA." 223 F.3d at 537. The court then considered 29 C.F.R. § 2510.3-1(j), which addresses certain "group or group-type insurance programs" and exempts from ERISA insurance programs where the employer makes no contributions, participation is voluntary for employees, the sole function of the employer is publicizing and collecting premiums from the employees, and the employer receives no consideration in connection with the program other than reasonable compensation for administrative services

actually rendered.

The court determined that the Paul Revere insurance plan was subject to ERISA because the plan failed to meet the criteria outlined in the "safe harbor" regulation, for example, the employer purchased the plan and paid the employee's premiums and the LTD benefits was not an optional benefit for all employees. *Id.* at 537–38. The court also stated that:

> We note, further, that, throughout its existence, the disability policy was part of a broader benefits package maintained by CPG for its employees. Many aspects of that plan were financed in whole or in part by CPG. For purposes of determining whether a benefit plan is subject to ERISA, its various aspects ought not be unbundled.

*Id.* at 538.

Relying on *Postma*, Labcorp argues that the payroll exception is also a "safe harbor" like § 2510.3-1(j) and that its STD plan ought not to be "unbundled" from the other benefits under the Plan. (Def.'s Br. at 11.) It argues that the payroll exception "merely acts as a shield for employers seeking to avoid the requirements and liabilities of an ERISA Plan; not as a sword for participants to utilize the ERISA rights afforded to them under the Plan, only to turn around and claim that the benefits that the employer receives for providing these burdensome employee rights should not apply." (*Id.* at 12.) But this regulation is neither a sword nor a shield: its purpose is to "clarify the definition of the terms 'employee welfare benefit plan'" and to list practices that "do not constitute employee pension benefit plans" within the meaning of the Act. *See* § 2510.3-1(1). And I do not read *Postma* as holding that so long as one benefit in an overall benefit plan is covered by ERISA, it follows that the exempt practices listed in § 2510.3-1 are no longer exempt. The *Postma* court had already determined that the LTD policy did not meet the exemption listed in § 2510.3-1(j). The quoted language

on which Labcorp relies is dicta and does not clearly stand for the proposition Labcorp asserts.

Labcorp bears the burden of showing that the STD policy falls under ERISA, as well as bears the burden of showing this Court has subject-matter jurisdiction. As stated above, the removal statute is construed narrowly and courts should resolve any doubts regarding subject-matter jurisdiction in favor of remand.

Labcorp's STD policy falls under the express terms of 29 C.F.R. § 2510.3-1(b)(2) and Labcorp has failed to meet its burden of showing this Court has subject-matter jurisdiction. Thus, remand is proper.

3. *Viability of Payroll Practices Exemption After Loper*

Finally, Labcorp argues that under the Supreme Court's recent decision in *Loper*, even if its STD benefits fall within the payroll exemption, the regulation should be disregarded because the Department of Labor lacked statutory authority to promulgate it and the regulation conflicts with the plain language of ERISA. (Def.'s Br. at 13–16.) Labcorp reads *Loper* far too broadly. *Loper* does not stand for the proposition that all regulations promulgated by federal agencies must be disregarded. Rather, what *Loper* did was overturn the Court's two-step framework to interpret statutes administered by federal agencies as articulated in *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The *Chevron* framework is as follows:

> After determining that a case satisfies the various preconditions we have set for *Chevron* to apply, a reviewing court must first assess "whether Congress has directly spoken to the precise question at issue." If, and only if, congressional intent is "clear," that is the end of the inquiry. But if the court determines that "the statute is silent or ambiguous with respect to the specific issue" at hand, the court must, at *Chevron*'s second step, defer to the agency's interpretation if it "is based on a permissible construction of the statute."

*Loper*, 144 S. Ct. at 2254 (internal citations omitted). But the *Loper* Court found that statutory

ambiguity is not a delegation of authority to an agency; rather, it is the obligation of the courts to independently interpret statutes. *Id.* at 2266. The Court concluded that courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires" and when "a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 2273.

Labcorp's contention that the Department of Labor was not given authority to promulgate the payroll exception (Def.'s Br. at 13–14) is unsupported. ERISA specifically confers on the Department of Labor the authority to prescribe regulations the Secretary finds "necessary or appropriate to carry out the provisions of this subchapter," including defining "technical and trade terms used in such provisions." 29 U.S.C. § 1135. The regulation at issue, 29 C.F.R. § 2510.3-1, is clarifying the definition of an "employee welfare benefit plan," include certain practices (such as payroll practices) that do not fall under the definition of "employee welfare benefit plan." The *Loper* Court acknowledged that Congress has often enacted statutes that give an agency a degree of discretion, including giving the agency the authority to give meaning to a particular statutory term. 144 S. Ct. at 2263. In those cases, "the role of the reviewing court under the APA is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits. The court fulfills that role by recognizing constitutional delegations, fixing the boundaries of the delegated authority, and ensuring the agency has engaged in reasoned decisionmaking within those boundaries." *Id.* (internal quotations and citations omitted).

Labcorp argues that the Department of Labor overstepped its bounds in promulgating

the payroll practices exception, stating that Congress enacted expansive coverage to induce employers to offer benefits to employees and to ensure that employees would receive the benefits that they earned. (Def.'s Br. at 15.) But the Supreme Court has already considered and upheld the payroll practices exception in *Morash*. *See* 490 U.S. at 120–21 ("It is sufficient for this case that the Secretary's determination that a single employer's administration of a vacation pay policy from its general assets does not possess the characteristics of a welfare benefit plan constitutes a reasonable construction of the statute."). In *Morash*, the Supreme Court stated that Congress' "primary concern" in enacting ERISA "was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds." 490 U.S. at 115. The Court concluded that employees "who are beneficiaries of [ ] a trust face far different risks and have far greater need for the reporting and disclosure requirements that the federal law imposes than those whose vacation benefits come from the same fund from which they receive their paychecks." *Id.* at 120. The same is true for STD plans that also meet the regulatory definition of a payroll practice. Again, when an employer pays temporary benefits from general assets, "there is no benefits fund to abuse or mismanage and no special risk of loss or nonpayment of benefits." *McMahon*, 162 F.3d at 36.

Although *Morash* predates *Loper*, the *Loper* Court was clear that its decision does "not call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful . . . are still subject to statutory stare decisis despite our change in interpretive methodology." 144 S. Ct. at 2273. For these reasons, Labcorp has not shown the payroll practices regulation is unlawful under *Loper*.

## CONCLUSION

Hansen sued her employer, Labcorp, in state court alleging Labcorp violated Wisconsin law by failing to pay her STD benefits she was allegedly owed. Labcorp removed Hansen's lawsuit to federal court, arguing that Hansen's claim falls under ERISA and thus federal jurisdiction is proper. I find that Labcorp's STD benefits fall under the regulation exempting certain "payroll practices" from the definition of "employee welfare benefit plan" and thus does not fall under ERISA. As such, there is no federal jurisdiction in this case. While Labcorp argues the regulation establishing exempt "payroll practices" should be disregarded after the Supreme Court's recent decision in *Loper* doing away with *Chevron* deference, I find that the regulation was lawfully promulgated.

Labcorp bears the burden of showing that its plan is covered by ERISA, as well as the burden of showing that subject matter jurisdiction is proper before this Court. I find that Labcorp failed to meet its burden as to both questions. Thus, Hansen's motion to remand is granted. Labcorp's pending motion to dismiss is denied as moot.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand to State Court (Docket # 9) is **GRANTED**. The case is remanded to Milwaukee County Circuit Court.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (Docket # 6) is **DENIED AS MOOT**.

Dated at Milwaukee, Wisconsin this 24th day of October, 2024.

BY THE COURT:

*Nancy Joseph*
_____
NANCY JOSEPH
United States Magistrate Judge